Approved: _____
Justin Horton
Assistant United States Attorney

Before: THE HONORABLE ONA T. WANG
United States Magistrate Judge
Southern District of New York

------------------------------- X

UNITED STATES OF AMERICA

- v. -

ECE ALPTUNAER,

Defendant.

------------------------------- X

**23 MAG 1055**

<u>SEALED COMPLAINT</u>

Violations of
18 U.S.C. §§ 1343 and 2

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

DAVID WEBSTER, being duly sworn, deposes and says that he is a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

## COUNT ONE
### (Wire Fraud)

1.   From at least in or about June 2022 up to and including at least in or about January 2023, in the Southern District of New York and elsewhere, ECE ALPTUNAER, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and attempting to do so, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, ALPTUNAER wrongfully diverted funds belonging to a company at which she was employed ("Company-1") to bank accounts she controlled, and in connection therewith and in furtherance thereof, ALPTUNAER transmitted and caused to be transmitted interstate electronic mail, telephone calls, and wire transfers of funds.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2. I am a Special Agent for HSI. I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, on my examination of various reports and records, and on my conversations with witnesses. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. Based on my communications with an executive at Company-1 ("Individual-1"), a representative of Payment Processor-1, and my review of Payment Processor-1's business records, Company-1's business and bank records, and other documents in Company-1's possession reflecting wire transfers done in Company-1's name, I have learned, in substance and in part, that:

    a. Individual-1 founded and manages Company-1. Individual-1 conducts a substantial amount of Company-1's business from a location in Manhattan.

    b. In or around November 2021, Individual-1 hired ECE ALPTUNAER, the defendant, to work as a part-time bookkeeper for Company-1.

    c. Based on emails I have reviewed, while ALPTUNAER worked remotely for Company-1, ALPTUNAER sent emails to Individual-1—including about funds transfers and vendor invoices—to Individual-1's Company-1 email address, the signature line of which reflected his business location in New York, New York.

    d. Individual-1 provided ALPTUNAER, in her capacity as Company-1's bookkeeper, with access to, and entrusted her to operate, Company-1's account with an online third-party payment processing service ("Payment Processor-1") through which Company-1 paid certain of its vendors (the "Company-1 Online Payments Account"). Individual-1 directed ALPTUNAER to access the Company-1 Online Payments Account with login credentials initially set up by, and still in the name of, a former Company-1 employee.

    e. Individual-1 authorized ALPTUNAER to use the Company-1 Online Payments Account to pay certain of Company-1's vendors, including by logging invoices that these vendors sent to Company-1 and causing payment to be made to these vendors from Company-1's business bank accounts through Payment Processor-1.

4. I have reviewed a Payment Processor-1 business record that references a list of 100 funds transfers (the "Payment Processor-1 Funds Transfers Document"). Based on my review of this document and related Payment Processor-1 business records, and my communications with a representative of Payment Processor-1, I have learned, in substance and in part, that:

    a. ECE ALPTUNAER, the defendant, opened an account at Payment Processor-1 in her own name (the "ALPTUNAER Payment Processor-1 Account"). ALPTUNAER then linked certain bank accounts to the ALPTUNAER Payment Processor-1 Account, allowing for those bank accounts to receive funds transfers effected through Payment Processor-1.

    b. Based on my communications with Individual-1, I understand that Company-1 does not maintain accounts at any of the banks from which ALPTUNAER linked bank accounts to the ALPTUNAER Payment Processor-1 Account.

c. The "Payment Processor-1 Funds Transfers Document" reflects approximately 100 funds transfers, between on or about February 8, 2022, and on or about December 19, 2022, each of which constitutes "payments that were sent from [Company-1]'s bank accounts to bank accounts controlled by [ALPTUNAER]," which accounts were linked to the ALPTUNAER Payment Processor-1 Account. As indicated by the Payment Processor-1 Funds Transfers Document, these transfers represented at least approximately $429,000 moved from Company-1's business bank accounts to ALPTUNAER's personal bank accounts.

5. I have also reviewed a series of invoices that were produced by Payment Processor-1 (the "Payment Processor-1 Invoices"). Based on my review of the Payment Processor-1 Invoices, and my communications with a representative of Payment Processor-1, I have learned, in substance and in part, that:

a. The Payment Processor-1 Invoices were uploaded to the ALPTUNAER Payment Processor-1 account. The invoices purport to reflect a bill sent by ECE ALPTUNAER, the defendant, to Company-1. One example is an invoice dated April 27, 2022 (the "Exemplar Invoice"). The top left corner of the Exemplar Invoice includes ALPTUNAER's name, over "Dept. 33654, San Francisco, CA," and a phone number I understand from Company-1's business records to be associated with ALPTUNAER. As shown below, the Exemplar Invoice lists Company-1 under "Bill To," and includes a single line item (with a blank "Description" field) for $5,560.71:

Ece Alptunaer
Dept. 33654
San Francisco, CA 94139
2039063239

**INVOICE**

| | |
|---|---|
| Invoice #: | MUUS20220142572 |
| Invoice Date: | 04/27/22 |
| Amount Due: | $0.00 |

**Bill To:**
26 Dot Two, LLC

| Due Date |
|---|
| 04/27/22 |

| Item | Description | Quantity | Price | Amount |
|---|---|---|---|---|
| | | 1 | $5,560.71 | $5,560.71 |

| | |
|---|---|
| Subtotal: | $5,560.71 |
| Sales Tax: | $0.00 |
| Total: | $5,560.71 |
| Payments: | $5,560.71 |
| Amount Due: | $0.00 |

To pay online, go to https://app02.us.bill.com/p/ecealptunaer

      b. As shown below, the Payment Processor-1 Funds Transfers Document reflects a transfer of the same amount ($5,560.71) on the same date (April 27, 2022) from Company-1's business bank accounts to a bank account that I know, based on communications with Payment Processor-1, is controlled by ALPTUNAER:

4

| REFERENCE# | CUSTOMER | PAYMENT DATE | PAYMENT TYPE | STATUS | CURRENCY | AMOUNT |
|---|---|---|---|---|---|---|
| P22020801 - 6438050 | 26 Dot Two, LLC | 2/8/2022 | ePayment | Paid | USD | 3,140.36 |
| P22020901 - 6790747 | 26 Dot Two, LLC | 2/9/2022 | ePayment | Paid | USD | 3,140.36 |
| P22021501 - 8297205 | 26 Dot Two, LLC | 2/15/2022 | ePayment | Paid | USD | 3,140.36 |
| P22021801 - 9379489 | 26 Dot Two, LLC | 2/18/2022 | ePayment | Paid | USD | 3,140.36 |
| P22022301 - 0496266 | 26 Dot Two, LLC | 2/24/2022 | ePayment | Paid | USD | 3,140.46 |
| P22030201 - 2104480 | 26 Dot Two, LLC | 3/2/2022 | ePayment | Paid | USD | 3,140.46 |
| P22031501 - 5532777 | 26 Dot Two, LLC | 3/15/2022 | ePayment | Paid | USD | 3,140.36 |
| P22031801 - 6550668 | 26 Dot Two, LLC | 3/18/2022 | ePayment | Paid | USD | 9,887.52 |
| P22040601 - 1213718 | 26 Dot Two, LLC | 4/6/2022 | ePayment | Paid | USD | 3,317.31 |
| | 26 Dot Two, LLC | 4/7/2022 | ePayment | Paid | USD | 3,317.31 |
| | 26 Dot Two, LLC | 4/11/2022 | ePayment | Canceled | USD | 6,132.40 |
| | 26 Dot Two, LLC | 4/12/2022 | ePayment | Paid | USD | 5,837.40 |
| | 26 Dot Two, LLC | 4/20/2022 | ePayment | Paid | USD | 6,810.20 |
| | 26 Dot Two, LLC | 4/20/2022 | ePayment | Paid | USD | 9,200.00 |
| | 26 Dot Two, LLC | 4/25/2022 | ePayment | Paid | USD | 4,580.33 |
| | 26 Dot Two, LLC | 4/27/2022 | ePayment | Paid | USD | 5,560.71 |

6. Based on my communications with Individual-1 and my review of Company-1's business records, I have learned, in substance and in part, that:

a. Company-1 never authorized anyone to make payments through Payment Processor-1 to ECE ALPTUNAER, the defendant's, personal bank accounts.

b. ALPTUNAER was an employee of Company-1, not a contractor, and her wages were reported using Form W-2. Company-1 never used Payment Processor-1 to process or pay ALPTUNAER's wages. And Company-1 never received, or authorized payment for, any invoices from ALPTUNAER.

c. The apparent total sum of unauthorized transfers from Company-1's business bank accounts to ALPTUNAER's personal bank accounts greatly exceeds ALPTUNAER's Company-1 salary.

d. Individual-1 did not authorize any funds transfers through Payment Processor-1 which caused the wiring of funds from Company-1's business bank accounts to ALPTUNAER's personal bank accounts.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of ECE ALPTUNAER, the defendant, and that she be arrested, and imprisoned or bailed, as the case may be.

s/ David Webster /OTW
David Webster
Special Agent
Homeland Security Investigations

Sworn to me through the transmission of this Complaint by reliable electronic means (telephone), this 8th day of February, 2023.

THE HONORABLE ONA T. WANG
United States Magistrate Judge
Southern District of New York